1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10   CHRIST APOSTOLIC CHURCH OF          Case No. CV 15-02040-AB (AGRx)

11   SOUTH BAY,
                                         **ORDER GRANTING MOTION TO**
12            Plaintiff,                  **DISMISS**

13
14   v.

15   LAKELAND WEST CAPITAL X,
16   LLC. et al.

17            Defendants.

18

19       Plaintiff Christ Apostolic Church of South Bay ("Plaintiff") initiated the instant

20   action, alleging various causes of action in relation to the non-judicial foreclosure

21   proceeding over the commercial real property located at 1190 Mahalo Place,

22   Compton, in Los Angeles County, California 90220. ("Subject Property"). (Dkt. No.

23   1.) In April 2014, after defaulting on the loan but before the foreclosure of the Subject

24   Property, Plaintiff filed suit in state court in April 2014 against the servicer and the

25   trustee. Plaintiff did not name Bank of America N.A. as a defendant in the first suit.

26
27
28

1    On March 19, 2015, Plaintiff filed a Third Amended Complaint ("TAC"),

2  naming Bank Of America, N.A ("BANA") as a Defendant for the first time.[1]  (Dkt.

3  No.1-7.)  On March 19, 2015, Defendant BANA filed a timely notice of removal

4  based on diversity jurisdiction, removing the action to this Court.  (Dkt. No. 1.)

5    Pending before this Court is BANA's motion to dismiss ("Motion").  (Dkt. No.

6  11.)  Plaintiff filed an opposition brief (Dkt. No. 18), and BANA filed a reply brief.

7  (Dkt. No. 19.)  On May 7, 2015, the Court deemed this matter appropriate for decision

8  without oral argument and took the matter under submission.  (Dkt. No. 20.)  Having

9  considered the materials submitted by the parties, and for the reasons indicated below,

10  the Court **GRANTS** BANA's Motion.  Plaintiff's claims for breach of an implied

11  contract and the implied covenant of good faith and fair dealing are dismissed with

12  prejudice.  All other claims are dismissed without prejudice.

13  **I.    FACTS ALLEGED IN THIRD AMENDED COMPLAINT**

14    Plaintiff alleges the following facts in this third amended complaint.  On

15  October 17, 2006, Plaintiff obtained a loan from and executed a promissory note (the

16  "Note") in favor of BANA for the purchase of the Subject Property.  (Third Am.

17  Compl. ("TAC") ¶ 1 Ex. C.); Dkt. No. 12, BANA's Request for Judicial Notice

18  (("RJN") Ex A.[2])  Plaintiff concurrently executed a first-lien deed of trust (the

19  "DOT"), which secured the loan and encumbered the Subject Property.  (RJN Ex. B.)

20  By signing the DOT, Plaintiff agreed that BANA, as well as its "successors and

---

22    [1]The caption page of the TAC lists Lakeland West Capital X, LLC and Chicago
23  Title Company as defendants, but the text of the complaint lists only BANA and Does
24  1-25 as defendants.

25    [2] Pursuant to Rule 201 of the Federal Rules of Evidence, a district court may
     take judicial notice of the facts that are not subject to reasonable dispute and either
26  "generally known" in the community or "capable of accurate and ready determination
     by reference to sources whose accuracy cannot be reasonably questioned."  Fed. R.
27  Evid. 201(b), (c).  Accordingly, the Court takes judicial notice of the publicly
     recorded documents identified in BANA's Request for Judicial Notice.  (Dkt. No. 12.)

assigns," could enforce the terms of the DOT by foreclosing on the Subject Property if Plaintiff defaulted on the Note.  (RJN Ex. B, p. 6, 9-10).

### A.   Loan Modification Agreements

Sometime in 2011, Plaintiff faced some financial problems, missed loan payments, and defaulted on the Note.  (TAC ¶ 6; RJN Ex. C, ¶ 1.2.)  Plaintiff applied to BANA for a loan modification.  (TAC ¶ 8.)  On July 18, 2012, Plaintiff, and BANA entered into a loan modification agreement dated May 25, 2012 ("the May 2012 Modification").  (TAC ¶¶ 6, 7; RJN Ex. C.)  Pursuant to the May 2012 Modification, Plaintiff was able to avoid foreclosure by agreeing to make payments under a new plan.  (TAC ¶ 7, Ex. C.)  Specifically, the May 2012 Modification deferred the past due payments from October 2011 through May 2012 until October 25, 2013.  (TAC¶ 7; RJN Ex. C, ¶ 1.2.)  It also provided for a "repayment period" during which Plaintiff would repay principal and interest in reduced installments of $3,000.00 per month for six months, from June through November 2012; and for the next 11 months, from December 2012 through October 2013, Plaintiff was required to pay $8,298.95 per month.  (RJN Ex. C, ¶ 1.1.)  The agreement provided that the remaining loan balance was due as a balloon payment on October 25, 2013, *i.e.*, the "Maturity Date" for the loan.  (*Id.*)

In December 2012, when the monthly payments were scheduled to increase from $3,000.00 to $8,298.95 per month pursuant to the May 2012 Modification, Plaintiff and BANA entered into a second loan modification agreement (the "December 2012 Modification").  (RJN Ex. D.)  Under the December 2012 Modification, Plaintiff was required to repay the loan in monthly reduced payments of $3,000.00 from January 2013 through October 25, 2013, after which the entire remaining balance of the loan was due.  (RJN Ex. D ¶ 1.2(a).)  Both the May 2012 and December 2012 Modifications identified October 25, 2013, as the Maturity Date when the entire loan balance was due as a balloon payment.  (RJN Ex. C, ¶ 1.2; Ex. D ¶ 1.3.)

**B.     Plaintiff's Request for an Extension of the December 2012 Modifications**

In October 2013, Plaintiff applied to BANA for an extension of the December 2012 Modification.  (TAC ¶ 8.)  In response to Plaintiff's request and after email exchanges between Plaintiff's representative (Tunde Shodiya) and BANA's representative (Arnold Lebrilla), BANA sometime in October 2013 "requested additional documentation from [P]laintiff."  (TAC ¶ 9.)  On November 13, 2013, Tunde Shodiya emailed Arnold Lebrilla the requested documentation and apologized for producing it late.  (TAC ¶ 9; TAC Ex. B.)  Lebrilla responded by email on the same day, writing "I will ask my analyst to process the information and get back to you."  (TAC Ex. B).

On November 19, 2013, Shodiya received an email from Lebrilla requesting Plaintiff to bring current the amounts past due on the loan.  (TAC Ex. C).  Lebrilla further stated that BANA would waive the late fees if Plaintiff could bring the loan current that day. (*Id.*)  In response, Shodiya told Lebrilla to debit Plaintiff's checking account for $6,359.89, the balance needed to bring the loan current.  (*Id.*)  Plaintiff alleges that it complied with the request "as part of the processing for consideration of the extension."  (TAC ¶ 10.)  Plaintiff also alleges that "[a]fter complying with all of [BANA]'s demands, [P]laintiff was expecting a response from the defendant that the extension had been approved."  (*Id.*)

**C.     Foreclosure of Subject Property**

On December 12, 2013, Plaintiff received a letter from Defendant that the loan had been sold to Lakeland West Capital X, LLC ("Lakeland"), effective November 20, 2013, and that Plaintiff should begin making its loan payments to Lakeland. (TAC ¶ 11; TAC Ex. D.)

On January 3, 2014, Lakeland recorded a Notice of Default indicating that Plaintiff was in default on the unpaid balance of the loan, which was due on October 25, 2013 pursuant to the December 2012 Modification.  (RJN Ex. E.)  On April 4,

4.

2014, Lakeland recorded a Notice of Trustee's Sale.  (RJN Ex. F)  The trustee's sale was held on June 17, 2014, and the Property was sold to a third party.  (RJN Ex. G.)

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure ("Rule") 8 requires a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The statement must provide enough detail to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  The Complaint must also be "plausible on its face," allowing the Court to "draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.*  Labels, conclusions, and "a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555.

Under Rule 12, a defendant may move to dismiss a pleading for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  When ruling on the motion, "a judge must accept as true all of the factual allegations contained in the complaint."  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  But a court is "not bound to accept as true a legal conclusion couched as a factual allegation."  *Iqbal*, 556 U.S. at 678 (2009) (internal quotation marks omitted).  While the scope of review is generally limited to the contents of the complaint, a court may consider "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading" without converting a motion to dismiss under Rule 12(b)(6) into a motion for summary judgment.  *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds by Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002); *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) ("Even if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the

5.

1  document or the document forms the basis of the plaintiff's claim.").  This

2  incorporation doctrine is permitted to prevent plaintiffs "from surviving a Rule

3  12(b)(6) motion by deliberately omitting references to documents upon which their

4  claims are based." *Parrino v. FHP Inc.*, 146 F.3d 699, 706 (9th Cir. 1998) *superseded*

5  *by statute on other grounds as recognized in Abrego Abrego v. The Dow Chem. Co.*,

6  443 F.3d 676, 681 (9th Cir. 2006).

7  **III.   DISCUSSION**

8       Plaintiff's operative complaint alleges that BANA "failed to deliver on its

9  promise to consider plaintiff for an extension of the modification plan as expected

10  from the exchanges plaintiff had with defendant."  (TAC ¶ 14, 37.)  Plaintiff also

11  alleges that BANA's false representations and promises regarding the extension and

12  Plaintiff's reliance on the same "prevented [Plaintiff] from negotiating and pursuing

13  alternatives with defendant, which resulted in the loan being sold . . . and the

14  foreclosure of the property."  (TAC ¶ 22, 23.)  Based on these allegations, Plaintiff

15  asserts claims against BANA for (1) intentional misrepresentation; (2) negligent

16  misrepresentation; (3) breach of contract; (4) promissory estoppel; and (5) breach of

17  the covenant of good faith and fair dealing.

18       **A.   Request for Judicial Notice**

19       The Court first addresses BANA's request for judicial notice with respect

20  Plaintiff's loan documents, including the Note and DOT (RJN. Ex. A, B), the May and

21  December 2012 Loan Modifications (RJN. Ex. C. D), Notice of Default (RJN Ex. E),

22  Notice of Trustee's Sale (RJN Ex. F), Trustee's Deed Upon Sale (RJN Ex. G), and the

23  copy of state court docket for this action before it was removed to federal court.

24  (RJN. Ex. H.)

25       The Court has reviewed Defendant's RJN Exhibits A-H and finds that their

26  contents are alleged in Plaintiff's Third Amended Complaint.  Additionally, Plaintiffs'

27  have not objected to or otherwise opposed Defendant's request for judicial notice, so

28  their authenticity is not disputed.  Accordingly, the Court will consider BANA's RJN

1  Exhibits A through H in ruling on the instant Motion to Dismiss.  *See Parrino*, 146

2  F.3d at 706.  The Court now turns to Plaintiff's substantive causes of action.

3  **B.    Intentional Misrepresentation (First Cause of Action)**

4  To state a claim for intentional misrepresentation, a plaintiff "must demonstrate

5  by clear and convincing evidence that (1) defendant made a false representation of

6  material fact; (2) with knowledge or belief that it was false, or with an insufficient

7  basis for asserting that it was true; (3) with intent that plaintiff rely on it; (4) that

8  plaintiff justifiably relied on; and (5) plaintiff suffered consequent damages."

9  *Arboireau v. Adidas-Salomon AG*, 347 F.3d 1158, 1165 (9th Cir. 2003).

10  Intentional misrepresentation is one category of fraud and, therefore, subject to

11  Rule 9(b)'s heightened pleading requirement.  *See Neilson v. Union Bank of Cal.*, 290

12  F.Supp.2d 1101, 1141 (C.D. Cal. 2003).  Rule 9(b) demands that the circumstances

13  constituting the alleged fraud "be 'specific enough to give defendants notice of the

14  particular misconduct . . . so that they can defend against the charge and not just deny

15  that they have done anything wrong.'"  *Kearns v. Ford Motor Co.,* 567 F.3d 1120,

16  1124 (9th Cir. 2009) (quoting *Bly–Magee v. California*, 236 F.3d 1014, 1019 (9th Cir.

17  2001)).  A party alleging fraud must "set forth more than the neutral facts necessary to

18  identify the transaction."  *Id.*

19  Plaintiff fails to plausibly allege sufficient specific facts that the statements by

20  BANA representative Lebrilla regarding Plaintiff's application for an extension of the

21  modification constituted fraudulent intentional misrepresentation.  Plaintiff's

22  intentional misrepresentation claim refers exclusively to the emails between Shodiya

23  and Lebrilla.  (TAC ¶¶ 19-24.)  In those emails, BANA's only representation was by

24  Lebrilla that he would ask the BANA analyst to process the information and "get back

25  to Plaintiff."  (TAC Ex. B.)  Plaintiff fails to make any allegation that Lebrilla's

26  statements were false when they were made, and that Lebrilla made the statements

27  knowing them not to be true with the intent that Plaintiff would rely on the statements

28  to its detriment.  Moreover, it is not plausible that Plaintiff was justified in relying on

7.

1  Lebrilla's statements to mean that BANA would definitely grant the modification
2  extension absent some indication by BANA that the extension would be granted.

3       As currently plead, Plaintiff's complaint alleges only neutral facts necessary to
4  identify communications between the parties in Plaintiff's attempt to negotiate a
5  possible extension of the expired loan modifications, which is insufficient to state a
6  claim for intentional misrepresentation.  However, because it is possible that Plaintiff
7  could add additional facts regarding purported specific false statements made by
8  BANA or its representatives, the Court cannot say that an amendment would be futile.
9  Accordingly, in the interests of justice, Plaintiff's first cause of action for intentional
10 misrepresentation is dismissed without prejudice.

11            **C.    Negligent Misrepresentation (Second Cause of Action)**
12       The elements of negligent misrepresentation are "(1) the misrepresentation of a
13 past or existing material fact, (2) without reasonable ground for believing it to be true,
14 (3) with intent to induce another's reliance on the fact misrepresented, (4) justifiable
15 reliance on the misrepresentation, and (5) resulting damage."  *Nat'l Union Fire Ins.*
16 *Co. of Pittsburgh, PA v. Cambridge Integrated Servs. Grp., Inc.*, 171 Cal. App. 4th 35,
17 50 (2009).  As with intentional misrepresentation, claims for negligent
18 misrepresentation must meet Rule 9(b)'s particularity requirements.  *F.T.C. v. Lights*
19 *of Am., Inc.*, 760 F. Supp. 2d 848, 853 (C.D. Cal. 2010).

20       With respect to the second cause of action, Plaintiff simply makes the general
21 allegation that BANA made false representations without any reference to any specific
22 purported false representation.  (TAC ¶¶ 27-30.)  Presumably Plaintiff refers to the
23 statements in emails by BANA representative Lebrilla to Shodiya, but that is far from
24 clear.  Assuming Plaintiff does refer to those statements, for the same reasons the
25 Court dismisses Plaintiff's intentional misrepresentation claim, so too does the Court
26 dismiss its negligent misrepresentation claim.

27       BANA asks the Court to dismiss Plaintiff's negligent misrepresentation claim
28 with prejudice because, even if granted leave to amend, Plaintiff could not sufficiently

allege a duty of care in this context.  As plead currently, Plaintiff's second cause of action fails to establish a duty of care because BANA's decision to entertain Plaintiff's request for a modification extension did not exceed the scope of its conventional role as a mere lender of money.  *Nymark v. Heart Fed. Sav. & Loan Assn.*, 231 Cal. App. 3d 1089, 1096 (1991).  "Liability to a borrower for negligence arises only when the lender 'actively participates' in the financed enterprise 'beyond the domain of the usual money lender.'"  *Id*; *Lueras v. BAC Home Loans Servicing, LP*, 221 Cal. App. 4th 49, 67 (2013) (holding that lender did not have a common law duty of care to consider home loan modification).  *But see Rufini v. CitiMortgage, Inc.,* 227 Cal. App. 4th 299, 303, 308 (2014), *as modified on denial of reh'g* (July 22, 2014) (holding that the plaintiff sufficiently alleged that the lender breached of the duty of care where the allegations stated that the lender, knowing that plaintiff's loan was sold and the home would be foreclosed upon, made a false promise to the plaintiff that the loan would be permanently modified, and in justifiable reliance on the lender's false promise, the plaintiff spent hundreds of hours in loan modification negotiations and lost the opportunity to pursue other ways to avoid foreclosure).  Here, Plaintiff fails to allege any false promises made by BANA, much less that BANA knew or had reason to believe that its purported misrepresentations would induce Plaintiff's reliance.  The Court cannot find, however, that leave to amend would be futile.  Plaintiff's complaint does not foreclose the possibility that BANA acted negligently – beyond its role as the mere lender of money – in its handling of the loan modification extension.  If, in an amended complaint, Plaintiff adequately alleges intentional misrepresentation by identifying actual false statements made by BANA, and the misrepresentation was beyond that of a conventional lender of money," then a claim for negligent misrepresentation may also be cured.  Thus, Plaintiff's second claim is dismissed <u>without prejudice</u>.

### D.   Breach of Implied Contract (Third Cause of Action)

To state a breach of contract claim, a plaintiff must allege (1) a valid contract, (2) performance by the plaintiff or excuse for nonperformance, (3) defendant's breach, and (4) damages. *Reichert v. Gen. Ins. Co. of Am.*, 68 Cal. 2d 822, 830 (1968). A note, mortgage, or deed of trust is subject to the statute of frauds and, as such, must be in writing and signed by the party to be charged. Cal. Civ. Code § 1624(a) (6). An agreement to modify a contract that is subject to the statute of frauds must likewise be in writing and signed by the party to be charged. *Id.* §§ 1624, 1698. If the action is based on an alleged breach of a written contract, the terms must be set out verbatim in the body of the complaint, or a copy of the written contract must be attached to the complaint or incorporated by reference. *FPI Dev., Inc. v. Nakashima*, 231 Cal.App.3d 367, 383 (1991). "A cause of action for breach of implied contract has the same elements as does a cause of action for breach of contract, except that the promise is not expressed in words but is implied from the promisor's conduct." *Yari v. Producers Guild of Am., Inc.*, 161 Cal. App. 4th 172, 182 (2008).

Plaintiff alleges that BANA breached an implied contract whereby BANA promised to consider Plaintiff for and actually grant an extension of the December 2012 Modification. As a result of BANA's alleged breach, the loan was sold to Lakeland, and Plaintiff's property was foreclosed and sold. (TAC ¶¶ 37, 38.) Plaintiff's operative complaint fails to allege sufficiently that there was a valid contract between Plaintiff and BANA. Rather than enter into a contract, at Plaintiff's request, Plaintiff and BANA were engaged in mere preliminary negotiations for an extension of the December 2012 Modification through email exchanges that provide no facts indicating that BANA promised to consider or approve the requested extension. (TAC ¶ 37; Ex. B, C.) Assuming that Plaintiff's request for an extension operated as an application for an extension of the December 2012 Modification, then the application and BANA's purported acceptance of the application did not create a

1    valid contract.  *See*, *Yari*, 161 Cal. App. 4th at 182 (holding that application for an

2    award did not create a contract or a promise on which reliance was reasonable).

3    Additionally, Plaintiff's allegations that "after complying with all of the defendant's

4    demands, plaintiff was expecting a response from the defendant that the extension had

5    been approved" do not support a claim for an implied contract.  (TAC ¶ 36, 44-45.)

6    Lebrilla's request on behalf of BANA that Plaintiff pay amounts past due on the loan

7    and provide additional documentation and his statement that he would have an analyst

8    process the information does not support an inference that BANA promised anything.

9    Even assuming it was a promise to consider and/or grant the application, Plaintiff has

10   not sufficiently alleged consideration: Plaintiff's payment of amounts past due to

11   bring the loan to current were a mere consideration to keep the December 2012

12   Modification active, and Shodiya's submission of the required documentation in

13   November 2013 were simply a necessary part of Plaintiff's application.

14        Because Plaintiff's breach of implied contract theory rests entirely on the

15   identified emails, and those emails cannot create any kind of contract between the

16   parties, the Court finds that any amendment to Plaintiff's third cause of action would

17   be futile.  Accordingly, Plaintiff's third cause of action is dismissed <u>with prejudice</u>.

18          **E.    Breach of Implied Covenant of Good Faith and Fair Dealing**

19                **(Fifth Cause of Action)**

20        "Generally, every contract . . . imposes upon each party a duty of good faith and

21   fair dealing in its performance and its enforcement."  *McClain v. Octagon Plaza, LLC*,

22   159 Cal. App. 4th 784, 798 (2008).  "[T]he implied covenant is a supplement to an

23   existing contract, and thus it does not require parties to negotiate in good faith prior to

24   any agreement."  *Id*. at 799.  To make out a claim for breach of the implied covenant

25   of good faith and fair dealing, "a plaintiff must establish the existence of a contractual

26   obligation, along with conduct that frustrates the other party's rights to benefit from

27   the contract."  *Rosal v. First Fed. Bank of Cal.*, 671 F.Supp.2d 1111, 1129 (N.D. Cal.

28   2009).

                                        11.

1    Plaintiff alleges that it provided all of the documentation and made the

2    payments required by [BANA] for the consideration of the extension, and BANA

3    breached its implied duties of good faith and fair dealing when it failed to approve an

4    extension and sold the loan to another entity.  (TAC ¶¶ 45-46.)  Plaintiff fails to state a

5    claim for breach of implied good faith and fair dealing with respect to an implied

6    contract for consideration and approval of an extension of the modified loan because

7    Plaintiff's claim requires the existence of a valid contract.  As stated above, Plaintiff

8    has not and cannot allege a valid contract based on the emails between Shodiya and

9    Lebrilla, and so Plaintiff's fifth cause of action for breach of the implied covenant of

10   good faith and fair dealing is dismissed <u>with prejudice</u>.

11              **F.    Promissory Estoppel (Forth Cause of Action)**

12   The elements of a claim for promissory estoppel are: "(1) a promise clear and

13   unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3)

14   [the] reliance must be both reasonable and foreseeable; and (4) the party asserting the

15   estoppel must be injured by his reliance."  *Aceves v. U.S. Bank, N.A.*, 192 Cal.App.4th

16   218, 225 (2011).  "[T]he doctrine of promissory estoppel is used to provide a

17   substitute for the consideration [that] ordinarily is required to create an enforceable

18   promise."  *Raedeke v. Gibraltar Sav. & Loan Ass'n*, 10 Cal.3d 665, 672 (1974).

19   Plaintiff alleges that the exchanges it had with BANA's representative led

20   Plaintiff believes that the modification extension would be approved.  (TAC ¶ 41-42.)

21   As pled, Plaintiff does not state a claim for promissory estoppel.  The statements by

22   Lebrilla in the November  2013 emails plainly do not include any promise that BANA

23   would grant Plaintiff's request for an extension of the December 2012 Modification

24   that had already expired and for which the entire balance was already due.  (TAC ¶ 7;

25   RJN Ex. C, ¶ 1.2.)  The November 13, 2013 email provides only that Plaintiff

26   submitted the requested documents (with an apology for submitting them late), that a

27   BANA analyst would process the information, and Lebrilla would get back to

28   Plaintiff.  (TAC Ex. B.)  The November 19, 2013 email discusses only the amounts

                                          12.

1   past due for the loan, waiver of late fees, and Plaintiff's agreement to pay the three

2   late payments to bring the loan to current.  (TAC Ex. C.)  Plaintiff concedes that the

3   emails "established a working relationship" between the parties (Opp. at 7:24-28), but

4   the emails certainly do not make a "clear and unambiguous" promise that Defendant

5   would approve the extension.

6          Plaintiff also fails to plausibly allege reasonable detrimental reliance.  Plaintiff

7   makes the conclusory allegation that it relied on the promise that a modification

8   extension would be approved by not "exploring other options for the repayments of

9   the loan."  (TAC ¶ 4.)  But it is simply not reasonable for Plaintiff to interpret

10  Lebrilla's statements that he would "get back to" Plaintiff to mean that BANA was

11  going to approve the extension and therefore Plaintiff should not explore other

12  emergency options to pay the overdue balloon payment.  By the time Plaintiff

13  submitted documentation for extension of the modification on November 13, 2013, it

14  had modified the original loan twice and was already in default on its payments.

15  (TAC ¶ 7; RJN Ex. C, D.)  Before BANA would consider Plaintiff's application for

16  the extension, Plaintiff was required to provide documentation and bring the past due

17  amounts current, and so Plaintiff did not otherwise take any action beyond what it was

18  required to do as a result of its own application.

19         As currently pled Plaintiff's claim for promissory estoppel must be dismissed.

20  Similar to the claims for intentional and negligent misrepresentation, however,

21  Plaintiff may be able to add additional facts that would cure the defects.  Accordingly,

22  Plaintiff's fourth cause of action for promissory estoppel is dismissed <u>without</u>

23  <u>prejudice</u>.

24

25

26

27

28

1

**IV.    CONCLUSION**

2      For the reasons set forth above, the Court hereby **GRANTS** BANA's motion to

3  dismiss.  (Dkt. No. 18.)  The third (breach of implied contract) and fifth (breach of

4  implied covenant of good faith and fair dealing) causes of action are dismissed <u>with</u>

5  <u>prejudice</u>.  The first (intentional misrepresentation), second (negligent

6  misrepresentation), and fourth (promissory estoppel) causes of action are dismissed

7  with leave to amend.

8      Plaintiff has 14 days from the date of this Order to file an amended complaint

9  with respect to its first, second, and fourth causes of action.  Failure to file an

10  amended complaint by the deadline will render this Order a dismissal of the action

11  with prejudice and full adjudication on the merits of Plaintiff's claims against BANA.

12      The July 27, 2015 Scheduling Conference is hereby **VACATED**.  The Court

13  will re-set the Scheduling Conference if and when Plaintiff files an amended

14  complaint.

15

16      **IT IS SO ORDERED.**

17

18  Dated: July 7, 2015      _____

19  HONORABLE ANDRÉ BIROTTE JR.
    UNITED STATES DISTRICT COURT JUDGE

20

21

22

23

24

25

26

27

28